FILED

2006 Apr-17  PM 04:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

## JASPER DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       **Plaintiff,**<br><br>**v.**<br><br>JOHNNY CUPPS, individually and d/b/a CUPPS TRUCKING COMPANY a/k/a JOHNNY CUPPS AND COMPANY,<br><br>       **Defendants.** | **CIVIL ACTION NO.<br>6:05-CV-0380-VEH** |

## MEMORANDUM OF OPINION

Before the court is the *Motion* (doc. 12) of the United States of America, plaintiff, for summary judgment as to all counts of its *Complaint* (doc. 1). The three count *Complaint*, filed by the plaintiff on February 18, 2005, seeks a judgment against the defendant for his unpaid AML[1] fees and civil penalties, and also seeks to compel the defendant to comply with an order of the Secretary of the Interior. The plaintiff is entitled to judgment as a matter of law on all three counts of the *Complaint*. Specifically, the court finds that: (1) there is no genuine dispute about any of the material facts, (2) defendant Cupps has waived his right to contest the material facts, and (3) many of the material facts have already been decided in plaintiff's favor.[2]

---

[1]    Abandoned mine land.

[2]    At Paragraph 6 of the *Complaint*, the United States alleged:

(continued...)

# I. BACKGROUND[3/]

In 1999, employees of the Office of Surface Mining Reclamation and Enforcement ("OSM"), in their capacity as authorized representatives of the Secretary, attempted to determine if Mr. Johnny Cupps was mining coal without a permit.  Auditors with OSM's Division of Compliance Management used the authority provided by the Surface Mining Control and Reclamation Act of 1977 ("SMCRA" or "the Act") and its implementing regulations to look at the books and records of business entities that purchased coal from Mr. Cupps.  OSM investigators looked at two locations in Jefferson County, Alabama, where Mr. Cupps appeared to be performing surface coal mining operations, a term defined in the Act at 30 U.S.C. § 1291(28).  Based upon the evidence obtained through AML Fee Compliance Audit No. 990241029, and through a mine site visit by OSM investigators on December 3, 1999, the federal regulatory agency concluded that Mr. Cupps was illegally mining

---

[2/]   (...continued)
The regulatory jurisdiction of the Secretary of the Interior over Defendant Cupps (and over the surface coal mining operations he conducted in Jefferson, Blount and Walker Counties, Alabama) has already been litigated and decided in favor of the United States in a proceeding styled *United States v. Cupps*, No. CV-00-J-1368-J [sic].   Likewise, Mr. Cupps' obligation to comply with the Act has already been litigated and decided in favor of the United States in that case. Consequently, Defendant Cupps, individually and d/b/a Cupps Trucking Company, a/k/a Johnny Cupps and Company, is precluded from re-litigating the Secretary's regulatory jurisdiction over these mine sites.

[3/]   The plaintiff has not opposed defendant's *Motion* and has not filed any evidence in opposition to the *Motion*.  However, while the court has largely adopted the plaintiff's *Memorandum in Support of Motion for Summary Judgment* (doc. 14), it has done so only after carefully verifying the factual allegations and legal propositions contained therein.

coal without a permit in Jefferson County at sites known as "the 282 Project" and "the Dad's Hill Project."

On February 23, 2000, authorized representatives of the Secretary issued "imminent harm" cessation orders to Defendant Cupps that required him to stop conducting surface coal mining operations at the 282 Project and the Dad's Hill Project. OSM's initial cessation orders (identified in the *Complaint* as CO 2000-100-204-001 and CO 2000-100-204-002) specifically directed Mr. Cupps to stop all surface coal mining operations he was then conducting, to obtain a valid permit from the state regulatory authority, or, in the alternative, to abate the violations of state and federal law.[4]

Mr. Cupps did not cease all coal mining operations as required by the initial federal cessation orders and did not comply with the other provisions of the initial cessation orders within the specified time. As a result, two "failure to abate" cessation orders were issued to Defendant Cupps on April 6, 2000 (identified in the complaint as CO 2000-100-204-003 and CO 2000-100-204-004). Mr. Cupps did not cease his illegal mining operations at the 282 Project and the Dad's Hill Project on and immediately after April 6, 2000, despite having been issued two cessation orders for each of his unpermitted mining operations on two different occasions by authorized representatives of the Secretary. The United States therefore sought to

---

[4] The federal law is the Surface Mining Control and Reclamation Act of 1977. SMCRA's counterpart in this state is the Alabama Surface Mining Control and Reclamation Act.

compel compliance with the Secretary's orders through a preliminary injunction.[5] That first lawsuit was filed on May 22, 2000, and was docketed initially as CV-00-J-1368-J[6].

At the preliminary injunction hearing in the first lawsuit, Mr. Cupps claimed that OSM and the Secretary have no jurisdiction over his mining operations. Defendant claimed his operations are exempt from regulation under SMCRA pursuant to the "16 ⅔ exemption" and the "exemption for coal exploration" set out in 30 U.S.C. § 1291(28)(A).  However, United States District Judge Inge P. Johnson determined that Mr. Cupps is not entitled to those exemptions and that his surface coal mining operations at the Dad's Hill Project and the 282 Project therefore fall within the Secretary's regulatory jurisdiction.  Judge Johnson entered a *Preliminary Injunction* on June 15, 2000, that ordered Mr. Cupps not to engage in or carry out illegal coal mining operations.[7]  *See*, *Plaintiff's Brief in Opposition to Motion To Dismiss*, ***Exhibit 3***.

Defendant Cupps appealed the *Preliminary Injunction*, asserting that the district court did not have subject matter jurisdiction.  The Court of Appeals for the

---

[5]   At the time the preliminary injunction hearing was held on June 12 and 14, 2000, Mr. Cupps was still able to contest the validity of the Secretary's orders in the federal administrative forum pursuant to 30 U.S.C. § 1275.  Accordingly, the Secretary's request for a preliminary injunction only asked the district court to stop Mr. Cupps from engaging in or carrying out surface coal mining operations.  Consequently, the *Preliminary Injunction* of June 15, 2000, did not order Mr. Cupps to abate any SMCRA violations.

[6]   That lawsuit is now pending before the undersigned judge, who consequently is familiar with that case.

[7]   The *Preliminary Injunction* also warned Mr. Cupps of the consequences for failing to exhaust his administrative remedies to contest the federal cessation orders.

Eleventh Circuit rejected those arguments on February 16, 2001, and sustained the *Preliminary Injunction*.  Defendant Cupps did not further appeal the June 15, 2000, decision of the district court.

Defendant Cupps was caught violating the *Preliminary Injunction* at various times in March and April of 2001.  On three separate occasions in 2001, the United States sought to have Defendant Cupps held in contempt of court, and the United States was successful each time.[8/]

At the first contempt hearing held on March 29, 2001, and at the third contempt hearing, commenced on May 8, 2001, and concluded on May 14, 2001, the United States introduced evidence sufficient to prove to Judge Johnson that Mr. Cupps controlled an illegal coal mining operation at the Elvester Baptist Church site in Blount County, Alabama.  As a result of the evidence adduced on May 8, 2001, and May 14, 2001, Judge Johnson sanctioned Mr. Cupps for contempt for the third time by entering a judgment against him.  The *Final Judgment,* dated May 15, 2001 (subsequently amended in ways not relevant here), required defendant Cupps to abate the violations covered by the Secretary's cessation orders and also required him to abate the violations he created at the Elvester Church site.  The *Final Judgment* also ordered the defendant to refrain from harassing or threatening witnesses and to refrain from interfering with the enforcement of the laws and regulations governing surface

---

[8/]    Each of the district court's three orders sanctioning Defendant Cupps for his contemptuous acts dealt in some respect with an illegal mining operation Mr. Cupps conducted adjacent to the Elvester Baptist Church in Blount County, Alabama. The contempt sanctions entered in 2001 also dealt with the 282 Project and the Dad's Hill Project.

coal mining operations.  A copy of the *Final Judgment* was made a part of the record in this case when it was submitted in support of Plaintiff's *Brief in Opposition to Motion To Dismiss* as plaintiff's ***EXHIBIT 4***.

On May 29, 2001, Mr. Cupps filed a *Motion To Reconsider or for New Trial, or in the Alternative, Motion To Alter, Amend or Vacate the Judgment* with the district court.  That motion was denied by the district court on May 30, 2001. Defendant Cupps then filed a timely appeal of the *Final Judgment* with the Court of Appeals for the Eleventh Circuit.  The second appeal to the Eleventh Circuit was dismissed on Mr. Cupps' motion in accordance with a *Settlement Agreement* the parties negotiated on September 26, 2002, to resolve the fifth contempt proceedings instituted by the plaintiff.

Despite the fact that the *Final Judgment* of May 15, 2001, ordered him to refrain from engaging in any more surface coal mining operations without first obtaining a permit, Defendant Cupps was again caught illegally mining coal in an area known as "the Cupps Coal Yard site" in Walker County, Alabama.  In late 2001, Defendant Johnny Cupps, his brother (Mr. Stanley Cupps), and an employee (Mr. James Harten) were issued a cessation order by the state surface mining regulatory authority, the Alabama Surface Mining Commission ("ASMC"), for mining without a permit at the Cupps Coal Yard site.

OSM and the Office of the Solicitor undertook an investigation of the defendant's involvement in the activities at the Cupps Coal Yard.  During the investigation of those mining activities, state and federal employees interviewed Mr.

Marshall Bussey and determined that Mr. Bussey had been employed by Mr. Johnny Cupps at the Cupps Coal Yard site.[9/]  During that interview, Mr. Bussey disclosed he had also worked for defendant Cupps at the Elvester Church site, the Dad's Hill Project, and the 282 Project.  ASMC decided to use Mr. Bussey as its witness in the proceedings before the state administrative law judge on December 5, 2001.

On December 3, 2001, two days before the state administrative proceeding was held, defendant Cupps attempted to prevent Mr. Bussey from testifying at the state proceedings and from cooperating with OSM and with ASMC through threats of physical violence.  Decision of ALJ Lambrecht (submitted into the record of this case as ***Exhibit A*** to the *Complaint*), at 3.  On December 12, 2001, Mr. Marshall Bussey filed an application for review, pursuant to 30 C.F.R. § 865.12, with OSM, alleging that discriminatory acts were committed against him by his employer, defendant Johnny Cupps, in violation of 30 U.S.C. § 1293.[10/]

---

[9/]   That interview of Mr. Bussey occurred on November 5, 2001.  Decision of ALJ Lambrecht (submitted into the record of this case as ***Exhibit A*** to the *Complaint*), at 3.

[10/]   Pursuant to the federal regulations at 30 C.F.R. § 865.1(a)(1), it is unlawful for operators of coal mines to discriminate against an employee who cooperates with OSM by

> Firing, suspension, transfer or demotion, denial or reduction of wages and benefits, **coercion** by promises of benefits or **threats of reprisal**, and interference with the exercise of any rights afforded under the Act.

30 C.F.R. § 865.1(a)(1), emphasis added.  Furthermore, pursuant to 30 U.S.C. § 1293(a),

> No person will discharge, or in any other way discriminate against, or cause to be fired or discriminated against, any employee or any authorized representative of employees by reason of the fact that such employee or representative has filed, instituted, or caused to be filed or instituted any

(continued...)

As is required by 30 U.S.C. § 1293(b), OSM investigated the allegations in Mr. Bussey's written statement and found that a violation of 30 C.F.R. Part 865 probably had occurred.   OSM subsequently requested an administrative hearing on Mr. Bussey's behalf pursuant to 30 C.F.R. § 865.14(a).   After Mr. Cupps was given an opportunity to be heard on the issue of his discriminatory acts, an order was issued on behalf of the Secretary that obligated Defendant Cupps to abate his violations of 30 C.F.R. Part 865 by taking the following corrective actions:

1. Paying Marshall Bussey wages in the amount of $1228.50 (94.5 hours at $ 13 per hour);

2. Paying Marshall Bussey the amount of $172.80 to cover costs and expenses reasonably incurred in connection with the institution and prosecution of the administrative proceeding;

3. Supplying a copy of 30 C.F.R. Part 865 to all of the employees who have worked for Mr. Cupps at his various surface mining operations, and all of his employees who are now, or will in the future, work for him at a surface mining operation; and

4. Refraining from committing additional discriminatory acts against Marshall Bussey or any other employee covered by 30 C.F.R. Part 865.

*See* Order of Administrative Law Judge Frederick W. Lambrecht dated June 12, 2003, at 5 – 6, submitted as ***Exhibit A*** to the *Complaint*.[11/]

---

[10/]   (...continued)
proceeding under this chapter, or has testified or is about to testify in any proceeding resulting from the administration or enforcement of the provisions of this chapter.

[11/]   Count III of the instant *Complaint* seeks to enforce the Order of Administrative Law Judge Frederick W. Lambrecht dated June 12, 2003.

On March 4, 2002, a fourth contempt action was instituted in federal district court due to Mr. Cupps' violations of the terms of the *Final Judgment* of May 15, 2001. The United States alleged that Mr. Cupps violated the *Final Judgment* by (among other things) mining coal without a permit at the Cupps Coal Yard site and by threatening or harassing Applicant Bussey and other federal witnesses.

A hearing on the United States' fourth allegations of contempt was held on April 12, 2002. Mr. Marshall Bussey was a witness for the government as to both types of Defendant Cupps' contemptuous conduct — mining coal without a permit at the Cupps Coal Yard site and threatening or harassing persons with knowledge of his illegal mining operations. *See* Order of Administrative Law Judge Frederick W. Lambrecht dated June 12, 2003, at note 6 on 3 – 4, submitted as ***Exhibit A*** to the Complaint. Defendant Cupps was held in contempt for the fourth time. Judge Johnson found the plaintiff's witnesses at that hearing (including Mr. Bussey) to be credible and persuasive. She specifically found the testimony of defendant Cupps to be "not credible", "lack[ing] credence", "incredible", and "untruthful". However, the judge believed defendant Cupps' testimony when he admitted that his memory is faulty. *See* Judge Johnson's *Order Citing Defendant Cupps for Contempt* dated April 18, 2002, a copy of which is supplied as plaintiff's ***Exhibit I*** in support of this *Motion for Summary Judgment* and *Memorandum in Support of Motion* at Paragraphs 3, 5, 7 and 10.

For committing the contemptuous acts described in OSM's ***E<small>XHIBIT</small>  I***, defendant Cupps was incarcerated until he purged himself of contempt by sufficiently performing the tasks Judge Johnson set for him in ***E<small>XHIBIT</small> I*** at Pragraphs A – M.

A hearing on the government's fifth contempt proceeding was held on September 26, 2002, and was resolved by a *Settlement Agreement*. Defendant Cupps was held in civil contempt[12] for a sixth time on October 6, 2005, for failing to comply with that *Settlement Agreement* and for failing to reclaim his four illegal mine sites.

## II.  P<small>ROCEDURAL</small> H<small>ISTORY OF THE</small> I<small>NSTANT</small> C<small>ASE</small>

Defendant Cupps was cited by OSM for mining coal without a permit at the 282 Project and the Dad's Hill Project in February and April of 2000.  A lawsuit was filed by the United States in May, 2000, to compel Mr. Cupps to comply with the four cessation orders issued to him by OSM.  However, the initial lawsuit did not seek to collect the civil penalties that accrue as a matter of law on cessation orders, and did not seek to collect the unpaid AML fees that are assessed as a matter of law upon coal production.  Likewise, the initial lawsuit did not seek to enforce the Order issued on behalf of the Secretary on June 12, 2003.  The three claims for relief sought in the instant lawsuit did not exist when the initial complaint was filed.  The United States filed a *Complaint* for these claims on February 18, 2005.

Defendant Cupps has not filed an answer to the instant *Complaint*, and has not offered any defense to this action.  The only pleading filed by the defendant in this action is his *Motion To Dismiss*.  This Court denied that *Motion To Dismiss* on

---

[12]   By the undersigned judge.

January 10, 2006.

### III.   SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party is entitled to "judgment as a matter of law" when the nonmoving party fails to make a sufficient showing of an essential element of the case to which the nonmoving party has the burden of proof.  *Everett v. City of Atlanta,* 833 F.2d 1507 (11th Cir. 1987) at 1510, quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

By seeking entry of a summary judgment, the plaintiff has assumed the burden of illuminating for the Court the reasons why the defendant Cupps cannot raise a genuine issue of material fact sufficient to justify a trial.  *United States v. Gulf States Steel*, 54 F. Supp. 2d 1233 (N.D. Ala. 1999) at 1236.

Plaintiff failed to file a brief in opposition to the defendant's motion for summary judgment.  Thus, the nonmovant has not opposed the motion for summary judgment in the instant action.  However, "the district court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed, but, rather, must consider the merits of the motion." *United States v. One Piece of Real Property*, 363 F.3d 1099, 1101 (11th Cir. 2004), citing *Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir. 1988) (per curiam).  While this court is not required

to examine every item of evidence before it when considering a motion for summary judgment, it must make certain that the motion is "supported by evidentiary materials." *One Piece of Real Property*, 363 F.3d at 1101. At the least, this court must consider all the evidence submitted by the movant in support of its motion. *Id.*, citing *Jeroma v. Massey*, 873 F.2d 17, 20 (1st Cir. 1989) (per curiam) (". . . the district court must review the motion and the supporting papers to determine whether they establish the absence of a genuine issue of material fact.")  The movant must demonstrate an absence of a genuine issue of material fact; if the movant fails to meet his burden, this court may deny the motion, without regard to whether the nonmovant has filed a response. *Hibernia Nat'l Bank*, 776 F.3d at 1279, citing *John*, 757 F.2d at 708.  However, if the nonmovant has not supplied the court with a response to dispute any issue of fact, this court may receive the movant's factual account as "a prima facie showing of its entitlement to judgment." *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988), citing *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## IV.  ANALYSIS

The pleadings and exhibits demonstrate that the plaintiff is entitled to judgment as a matter of law on all three counts of the *Complaint* because (1) there is no genuine dispute about any of the material facts, (2) many of the material facts have already

been decided in Plaintiff's favor, and (3) defendant Cupps has waived his right to contest the material facts.  Here follows a list of the material matters about which there is no genuine dispute:

A.     The Secretary of the Interior has regulatory jurisdiction over Defendant Cupps' illegal mining operations known as the 282 Project, the Dad's Hill Project, the Elvester Church site, and the Cupps Coal Yard site. This material fact was litigated and necessarily decided in the initial litigation, *United States v. Cupps*, No. CV-00-J-1368-J (now CV-00-1368-VEH).

B.     This Court has subject matter jurisdiction.  This material fact was litigated and necessarily decided in the initial litigation, *United States v. Cupps*, No. CV-00-J-1368-J (now CV-00-1368-VEH).

C.     OSM conducted an AML Fee Compliance Audit (audit 990241029) that determined Mr. Cupps produced at least 78,893.96 tons of coal during the first calendar quarter of 1995 through the fourth calendar quarter of 1997, and the second calendar quarter of 1998 through the third calendar quarter of 1999.  Sworn Declaration of Sean Spillane, submitted as plaintiff's ***Exhibit II*** in support of this *Motion for Summary Judgment* and *Memorandum in Support of Motion.*

D.     Producers of coal are required to pay a "reclamation fee" (commonly called the "abandoned mine land fee" or "AML fee") of 35 cents per ton for each ton of coal produced by surface mining methods. 30 U.S.C. § 1232 (a) and (b).

E.     OSM is entitled to collect interest, a late payment penalty, and administrative expenses on its claims, including claims for unpaid AML fees. 31 U.S.C. § 3717, 30 C.F.R. § 870.15(c) and 31 C.F.R. § 901.9

F.     After an investigation, OSM determined that defendant Cupps produced coal by surface mining methods at the 282 Project and the Dad's Hill Project prior to January 1, 2000 without obtaining the required permit from ASMC.  This material fact was litigated and necessarily decided in the initial litigation, *United States v. Cupps*, No. CV-00-J-1368-J (now CV-00-1368-VEH).

G.     By simple mathematical calculations, OSM has determined that Defendant Cupps owes the Secretary $27,962.88 in delinquent reclamation fees on the coal he produced prior to January 1, 2000, plus

-- 13 --

$12,334.85 in pre-judgment interest, $15,792.28 in late payment penalty, and $1127.73 in administrative costs, for a total of $57,217.74, through February 15, 2006, plus an additional $8.75 per day in interest, penalty and administrative costs through the date of judgment.  Sworn Declaration of Sean Spillane, submitted as plaintiff's ***Exhibit II*** in support of this *Motion for Summary Judgment* and *Memorandum in Support of Motion.*

H.   On February 23, 2000, OSM issued "imminent harm" cessation orders to Mr. Cupps for mining without a permit at the 282 Project and the Dad's Hill Project. Subsequently, on April 6, 2000, OSM issued "failure to abate" cessation orders to Mr. Cupps.  Sworn Declaration of Sean Spillane, submitted as plaintiff's ***Exhibit II*** in support of this *Motion for Summary Judgment* and *Memorandum in Support of Motion.*

I.   OSM is statutorily obligated to assess civil penalties on all cessation orders it issues. 30 U.S.C. § 1268(a); *and see* 30 C.F.R. § 845.12(a).

J.   OSM assessed a civil penalty in the amount of $3850.00 for each of the imminent harm cessation orders, CO 2000-100-204-001 and CO 2000-100-204-002. OSM subsequently assessed a civil penalty in the amount of $24,750.00 for each of the failure-to-abate cessation orders, CO 2000-100-204-003 and CO 2000-100-204-004. Sworn Declaration of Sean Spillane, submitted as plaintiff's ***Exhibit II*** in support of this *Motion for Summary Judgment* and *Memorandum in Support of Motion.*

K.   The defendant was specifically warned by Judge Johnson in the *Preliminary Injunction* issued in CV-00-J-1368-J that "Defendant Cupps is required by law to exhaust his administrative remedies to contest violations and OSM's regulatory jurisdiction before he can mount . . . challenges in a federal district court." *Preliminary Injunction*, submitted into the record in this case as ***Exhibit 3*** in support of plaintiff's *Brief in Opposition to Motion To Dismiss.*

L.   Defendant Cupps did not seek administrative review of the civil penalty assessments for any of the four cessation orders.  Sworn Declaration of Sean Spillane, submitted as plaintiff's ***Exhibit II*** in support of this *Motion for Summary Judgment* and *Memorandum in Support of Motion.*

M.   OSM is entitled to collect interest, a late payment penalty, and administrative expenses on its claims, including claims for unpaid civil penalties. 31 U.S.C. § 3717, 30 C.F.R. § 870.15(c) and 31 C.F.R. § 901.9.

-- 14 --

N.    By simple mathematical calculations, OSM has determined that defendant Cupps owes the Secretary $57,200.00 in civil penalties, plus $15,904.64 in pre-judgment interest, $19,085.44 in late payment penalty, and $4,269.80 in administrative costs, for a total of $96,459.88, through February 15, 2006, plus an additional $19.36 per day in interest, penalty and administrative costs through the date of judgment.    Sworn Declaration of Sean Spillane, submitted as plaintiff's ***Exhibit II*** in support of this *Motion for Summary Judgment* and *Memorandum in Support of Motion.*

O.    The grand total of reclamation fees and civil penalties plus interest, penalty and administrative costs owed as of February 15, 2006, is $153,677.62, plus $28.11 per day in interest, penalty and administrative costs through the date of judgment. Sworn Declaration of Sean Spillane, submitted as plaintiff's ***Exhibit II*** in support of this *Motion for Summary Judgment* and *Memorandum in Support of Motion.*

P.    Defendant Cupps discriminated against one of his employees, Mr. Marshall Bussey, on December 3, 2001, when he attempted to prevent Mr. Bussey from testifying against him through coercive threats of violence, and when he attempted to coerce Mr. Bussey to refrain from cooperating with OSM's investigation of the illegal minng at the Cupps Coal Yard site and the Elvester Church site  through threats of violence and by denial of wages.  Order of Administrative Law Judge Frederick W. Lambrecht dated June 12, 2003, at 5, submitted as ***Exhibit A*** to the *Complaint.*

Q.    The use of such coercion is a violation of 30 U.S.C. § 1293(a).  Order of Administrative Law Judge Frederick W. Lambrecht dated June 12, 2003, at 5, submitted as ***Exhibit A*** to the *Complaint*; *see also* 30 C.F.R. § 865.11(a)(2).

R.    Defendant Cupps violated 30 C.F.R. Part 865 by failing to provide Mr. Bussey and the other employees of his surface coal mining operations with a copy of Part 865, as is required by 30 C.F.R. § 865.11(b).  Order of Administrative Law Judge Frederick W. Lambrecht dated June 12, 2003, at 5, submitted as ***Exhibit A*** to the Complaint.

S.    To abate his violations of 30 U.S.C. § 1293(a), Defendant Cupps was ordered (A) to refrain from discriminating against Mr. Marshall Bussey or other employees who assisted OSM in the enforcement of SMCRA at any of his mine sites, (B) to distribute a copy of 30 C.F.R. Part 865 to all his past, current and future employees who engaged in or carried out surface coal mining operations, as is required by 30 C.F.R. § 865.11(b),

and (C) to pay his former employee, Mr. Marshall Bussey, the sum of $1401.30 (representing $1228.50 for back wages and $172.80 in expenses) in restitution.  Such restitution for discriminatory acts is authorized by 30 C.F.R. § 865.15(c) and 43 C.F.R. § 4.1204(a).  Order of Administrative Law Judge Frederick W. Lambrecht dated June 12, 2003, at 5 – 6, submitted as ***Exhibit A*** to the *Complaint*.

T.     Defendant Cupps has not pursued his administrative remedies for contesting the findings of ALJ Lambrecht in the manner required by the federal regulations.  Sworn Declaration of J.T. Begley, submitted as plaintiff's ***Exhibit III*** in support of this *Motion for Summary Judgment* and *Memorandum in Support of Motion.*

U.     Because he failed to appeal the decision of the Administrative Law Judge to the Interior Board of Land Appeals within 30 days in the manner provided by federal regulations, the decision of the Administrative Law Judge has become a final order of the Secretary. Sworn Declaration of J.T. Begley, submitted as plaintiff's ***Exhibit III*** in support of plaintiff's *Motion for Summary Judgment* and *Memorandum in Support of Motion* ; *and see* 43 C.F.R. 4.1271, which requires that notices of appeal be filed within 30 days of the receipt of the adverse decision; *and see The Hopi Tribe v. OSM*, 109 IBLA 374 (1989) (the timely filing of a request for hearing is essential to establish the jurisdiction of the Office of Hearings and Appeals); *see also Browder v. Ill. Dep't of Corrections*, 434 U.S. 257 (1978) at 264 (holding that a similar 30 day time limit to file an appeal established by Fed. Rule App. Proc. 4(a) and 28 U.S.C. § 2107 is "mandatory and jurisdictional.")

V.     Defendant Cupps has waived his right to contest his violations of 30 C.F.R. Part 865 before the Interior Board of Land Appeals, the Secretary's designee to hear appeals from decisions of Administrative Law Judges, by failing to file the requisite notice of appeal within 30 days.  43 C.F.R. § 4.1271 and 43 C.F.R. § 4.1101(a)(5).  Sworn Declaration of J.T. Begley, submitted as plaintiff's ***Exhibit III*** in support of this *Motion for Summary Judgment* and *Memorandum in Support of Motion.*

W.     Defendant Cupps is therefore barred from now trying to re-litigate any of the issues of fact or law decided by Administrative Law Judge Lambrecht under the exhaustion doctrine.  Sworn Declaration of J.T. Begley, submitted as plaintiff's ***Exhibit III*** in support of this *Motion for Summary Judgment* and *Memorandum in Support of Motion*; *see also , McGee v. United States*, 402 U.S. 479 (1971).

X.    Defendant Cupps has not paid Mr. Marshall Bussey wages in the amount of $1228.50 (94.5 hours at $ 13 per hour) or the amount of $172.80 to cover costs and expenses reasonably incurred in connection with the institution and prosecution of the administrative proceeding.  Neither has the defendant supplied a copy of 30 C.F.R. Part 865 to Mr. Bussey.  Sworn Declaration of Marshall Bussey, submitted as plaintiff's ***Exhibit IV*** in support of this *Motion for Summary Judgment* and *Memorandum in Support of Motion*.

## A.    The Claim for AML Fees — Count I of the *Complaint*

The United States is entitled to a judgment for $27,962.88 in delinquent reclamation fees on the coal Mr. Cupps produced prior to January 1, 2000, plus $12,334.85 in pre-judgment interest, $15,792.28 in late payment penalty, and $1127.73 in administrative costs, for a total of $57,217.74, through February 15, 2006, plus an additional $8.75 per day in interest, penalty and administrative costs through the date of judgment.  This is so because (1) there is no genuine issue as to any material fact about the debt for AML fees, and the plaintiff is entitled to a judgment as a matter of law for those unpaid fees, and (2) many of the issues that might otherwise affect the plaintiff's entitlement to a judgment for AML fees have already been litigated and decided in favor of the plaintiff.

As a matter of law, the Secretary is entitled to collect reclamation fees on each ton of coal produced in the United States.  *See* 30 U.S.C. § 1232.  Under 30 U.S.C. §1232(a), operators of surface coal mining operations must pay an excise tax of 35 cents per ton of coal mined by surface mining methods.  As a matter of law, the Secretary is entitled to collect interest, a late payment penalty, and administrative expenses on her claims for unpaid AML fees.  *See* 31 U.S.C. § 3717, 30 C.F.R. §

870.15(c) and 31 C.F.R. § 901.9.  There is no genuine issue about these material facts as the defendant has not filed an answer or any other pleading that disputes them.

Plaintiff is entitled to a summary judgment for the unpaid AML fees for another reason.  Defendant Cupps is barred by the doctrine of collateral estoppel from re-litigating issues that were actually litigated and necessarily determined in the plaintiff's favor.  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979).  Accordingly, Defendant Cupps cannot again contend, as he did in the related case, *United States v. Cupps*, No. CV-00-J-1368-J (now CV-00-1368-VEH), that his mining operations at the 282 Project and the Dad's Hill Project are exempt from SMCRA.[13/]  That issue was actually litigated and necessarily determined against the defendant, as evidenced by the *Preliminary Injunction*, the *Final Judgment*, and the *Contempt Citation* dated April 18, 2002, entered in CV-00-J-1368-J.[14/]

The Supreme Court's *Parklane* decision is reflected in the Restatement (Second) of Judgments (1982): "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."  Restatement (Second) of Judgments

---

[13/]  If Judge Johnson had determined Defendant Cupps' his mining operations were exempt from regulation by the Secretary, he would not owe reclamation fees on the coal he produced.

[14/]  As noted previously, the *Preliminary Injunction* and the *Final Judgment* were entered into the record of this case as ***Exhibits 3*** and ***4*** in support of plaintiff's *Brief in Opposition to Motion To Dismiss*.  The *Contempt Citation* dated April 18, 2002, was entered into the record as plaintiff's ***Exhibit I*** in support of its *Motion for Summary Judgment* and *Memorandum in Support of Motion*.

(1982) § 27.   While there are exceptions to this maxim [*see, e.g.*, Restatement (Second) of Judgments (1982) §§ 28 and 29], none of those exceptions applies here. Accordingly, the defendant is incapable of disputing the material facts that were actually litigated and necessarily decided against him in the related case, *United States v. Cupps*, No. CV-00-J-1368-J (now CV-00-1368-VEH).

The amount that is due on the plaintiff's AML claim has been computed by an authorized representative of OSM by simply multiplying the statutory rate for AML fees assessed upon coal produced by surface mining methods (35 cents per ton) by the amount of tons produced according to OSM's AML fee audit (78,893.96 tons). Both of those figures are reflected in OSM's business records, and are therefore admissible evidence in this case.   Sworn Declaration of Sean Spillane, submitted as plaintiff's ***Exhibit II*** in support of its *Motion for Summary Judgment* and *Memorandum in Support of Motion*, at Paragraph 3.   To that principal amount ($27,962.88) OSM has added interest, a late payment penalty, and administrative expenses.   Through simple mathematical calculations, OSM has determined that defendant Cupps presently owes the Secretary $57,217.74 through February 15, 2006. For each additional day that passes between February 15 and the date a judgment is issued, an additional $8.75 accrues.   Sworn Declaration of Sean Spillane, submitted as plaintiff's ***Exhibit II*** in support of this *Motion for Summary Judgment* and *Memorandum in Support of Motion*, at Paragraphs 4 and 5.

**B.   The Claim for Unpaid Civil Penalties — Count II of the *Complaint***

The United States is entitled to a judgment against Mr. Cupps for $57,200.00 in civil penalties, plus $15,904.64 in pre-judgment interest, $19,085.44 in late payment penalty, and $4,269.80 in administrative costs, for a total of $96,459.88, through February 15, 2006, plus an additional $19.36 per day in interest, late penalty and administrative costs through the date of judgment. This is so for the same reasons that the plaintiff is entitled to a judgment for AML fees, plus one additional reason.

As noted previously, defendant Cupps is barred by the doctrine of collateral estoppel from attempting to re-litigate the issues that were actually litigated and necessarily decided in the proceedings before Judge Johnson. Defendant Cupps therefore cannot contest the Secretary's regulatory jurisdiction over his mine sites, or his obligation to comply with the provisions of SMCRA. The claim for civil penalties that is addressed in Count II of the *Complaint* is directly attributable to the defendant's violation of his obligation to comply with SMCRA.

The additional reason why the plaintiff is entitled to a summary judgment on Count II is that the defendant failed to pursue and exhaust the administrative remedies afforded under the Act for contesting civil penalties assessed for SMCRA violations. Under the doctrine of exhaustion of administrative remedies, the defendant is barred from now contesting the facts of the underlying violations and the amounts of the civil penalty assessments.

There is an administrative forum afforded to operators of surface coal mines (such as Defendant Cupps) to contest violations cited by authorized representatives of the Secretary.  SMCRA provides as follows —

> A permittee issued a notice or order by the Secretary pursuant to the provisions of subparagraphs (a) (2) and (3) of section 521 of this title . . . or any person having an interest which is or may be adversely affected by such notice or order . . . ***may apply  to the Secretary for review*** of the notice or order within thirty days of the receipt thereof.

30 U.S.C. § 1275(a)(1), emphasis added.   Likewise, operators are afforded an administrative forum for contesting the amounts of civil penalty assessments. SMCRA says in relevant part —

> A civil penalty shall be assessed by the Secretary only after the person charged with a violation described under subsection (a) of this section has been given an opportunity for a public hearing.  Where such a public hearing has been held, the Secretary shall make findings of fact, and he shall issue a written decision as to the occurrence of the violation and the amount of the penalty which is warranted, incorporating, when appropriate, an order therein requiring that the penalty be paid. . . ***Where the person charged with such a violation fails to avail himself of the opportunity for a public hearing, a civil penalty shall be assessed by the Secretary after the Secretary has determined that a violation did occur, and the amount of the penalty which is warranted, and has issued an order requiring that the penalty be paid***.

30 U.S.C. § 1268(b), emphasis added.   Additionally, regulations have been promulgated to implement those administrative review rights.  The procedures for obtaining administrative review of cessation orders issued pursuant to § 521 of SMCRA can be found at 43 C.F.R. §§ 4.1160 – 4.1187.  The procedures for obtaining

administrative review of civil penalty assessments can be found at 43 C.F.R. §§ 4.1150 – 4.1158.

Where there are processes for administrative review such as the ones provided by Congress in SMCRA, one must generally exhaust administrative remedies before resorting to judicial review. *See FTC v. Standard Oil of California*, 449 U.S. 813, 101 S. Ct. 62, 66 L.Ed.2d 16 (1980); *Myers v. Bethlehem Shipbuilding Co.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938). The Court of Appeals for the Sixth Circuit examined the exhaustion requirement in the context of SMCRA and held:

> In the Surface Mining Act, Congress has provided a well-defined administrative system for resolution of enforcement actions stemming from cessation orders. Given this machinery, we are reluctant to permit a district court to interrupt the Secretary's determinations. Bypassing administrative remedies would impair the expeditious resolution of disputes and result in the forfeiture of administrative expertise.... [C]ircumventing the proscribed procedures could easily preclude the Secretary from building a factual record, from clarifying or narrowing the dispute, or from resolving the controversy altogether so as to obviate the necessity for judicial intervention. Accordingly, we conclude [the coal company] was required to exhaust its administrative remedies by seeking review and relief pursuant to § 525 before obtaining judicial review under § 526.

*Shawnee Coal Co. v. Andrus*, 661 F.2d 1083 (6th Cir. 1981) at 1092; *and see Deltona Corporation v. Alexander*, *supra*) (observing that exhaustion of administrative remedies is particularly important where a challenge to an agency's jurisdiction is raised "since the agency should ordinarily be given the first opportunity to consider a challenge to its jurisdiction").

The Supreme Court has long recognized that the exhaustion of administrative remedies doctrine restricts judicial scrutiny of agency action when a litigant has failed to pursue normal administrative remedies. *See, e.g., McGee v. United States*, *supra*. In the instant case, the exhaustion doctrine, combined with collateral estoppel principles (applicable to the issues — like the Secretary's regulatory jurisdiction over his illegal mines — that were necessarily litigated and decided in the plaintiff's favor in the related litigation) completely eliminate the defendant's ability to raise genuine issues of material facts.

By operation of law, defendant Cupps has waived his right to contest the amount of the civil penalty assessments and he is barred from now contesting the amount of the civil penalty assessments. *United States v. Finley*, 835 F.2d 134 (6th Cir. 1988); *Blackhawk Mining Co. v. Andrus*, 711 F.2d 753 (6th Cir. 1983); *B & M Coal Co. v. OSM*, 699 F.2d 381 (7th Cir. 1983); *Graham v. OSM,* 722 F.2d 1106 (3d Cir. 1983).[15/] Because the defendant is incapable of disputing the material facts about the assessment of civil penalties for the four cessation orders, the plaintiff is entitled to entry of a summary judgment on Count II of the *Complaint* as a matter of law.

---

[15/]   In one instance the District Court for the Northern District of Alabama ruled that OSM could waive the effects of the exhaustion doctrine by giving a coal company bad advice about its administrative remedies. *United States v. Camp Coal*, 637 F. Supp. 336 (N.D. Ala. 1986). In that case, the District Court determined that OSM's actions negated the precedent provided by *Blackhawk Mining Co. v. Andrus*, *B & M Coal Co. v. OSM*, and *Graham v. OSM*. The *Camp Coal* decision is inapplicable to the present case because (1) OSM has not suggested to defendant Cupps that he can circumvent any of the administrative review procedures, and (2) defendant Cupps, unlike Camp Coal, has made no effort to administratively contest the civil penalties assessed for the SMCRA violations attributed to him. Accordingly, *Blackhawk Mining Co. v. Andrus*, *B & M Coal Co. v. OSM*, and *Graham v. OSM*, are all valid precedent and the exhaustion doctrine applies to the facts of this case.

The Sworn Declaration of Sean Spillane, submitted as plaintiff's ***Exhibit II*** in support of plaintiff's *Motion for Summary Judgment* and *Memorandum in Support of Motion*, sets out the history of the civil penalty assessments of OSM, and demonstrates conclusively that defendant Cupps failed to pursue any of the administrative remedies afforded under SMCRA and its implementing regulations to contest the citations or the civil penalty assessments. *See* plaintiff's ***Exhibit II*** in support of *Motion for Summary Judgment* and *Memorandum in Support of Motion* at Paragraphs 4 – 21. As a matter of fact and law, the plaintiff is entitled to a judgment for the unpaid civil penalties.

## C.   The Claim for Injunctive Relief — Count III of the *Complaint*

The United States is entitled to a judgment as to Count III of the *Complaint* for the same reasons that entry of summary judgment is appropriate for Counts I and II. The material facts were decided against defendant Cupps in the administrative hearing conducted by Administrative Law Judge Lambrecht. More importantly, defendant Cupps failed to pursue the administrative remedies available to him to contest the determination that he violated 30 C.F.R. Part 865 and 30 U.S.C. § 1293, by discriminating against his employee, Mr. Marshall Bussey. *See* the Sworn Declaration of J.T. Begley and the Sworn Declaration of Marshall Bussey, submitted as ***Exhibits III*** and ***IV*** in support of plaintiff's *Motion for Summary Judgment* and *Memorandum in Support of Motion*. Consequently, defendant Cupps cannot now raise a material issue of fact as to Count III.

As demonstrated by the Order of Administrative Law Judge Frederick W. Lambrecht dated June 12, 2003, submitted as ***Exhibit A*** to the *Complaint* (and thereby made a part of the record of this case), Mr. Bussey filed a written application for review (pursuant to 30 C.F.R. § 865.12) with OSM alleging that discriminatory acts were committed against him by his employer, Mr. Johnny Cupps.  OSM investigated the allegations in Mr. Bussey's written statement (as OSM is obligated to do under 30 C.F.R. § 865.13) and found that a violation of 30 CFR § Part 865 had probably occurred.  In OSM's findings, it was alleged that Mr. Cupps discriminated against Applicant Bussey by threats of violence, and by (1) by failing to pay the Applicant Bussey wages he earned for work performed prior to his injury on October 20, 2001; (2) by failing to pay workers' compensation and disability benefits; and (3) by failing to rehire Applicant Bussey after he was able to return to work.  It was also alleged by OSM that Mr. Cupps had violated 30 C.F.R. § 865.11(b) by failing to provide his employees with a copy of Part 865.

Although he had a well-defined administrative system for resolution of the enforcement regarding the discriminatory acts against Mr. Bussey, defendant Cupps did not participate in any of the administrative review procedures set out in 3 C.F.R. §§ 865.13 – 865.15, or 43 C.F.R. §§ 4.1200 – 4.1205, and did not attempt to appeal the decision of Administrative Law Judge Lambrecht.  *See* the Sworn Declaration of J.T. Begley and the Sworn Declaration of Marshall Bussey, submitted as plaintiff's ***Exhibits  III*** and ***IV*** in support of its *Motion for Summary Judgment* and

*Memorandum in Support of Motion*.[16]   By operation of law, the decision of Judge

Lamrecht became an enforceable order of the Secretary thirty days after issuance due

to Mr.Cupps' failure to appeal.   *See* the Sworn Declaration of J.T. Begley, ***Exhibit***

***III***; *and see* 43 C.F.R. §§ 4.1205 and 4.1271; *see also William Francis Rice*, 88 I.D.

269 at 273 (Interior Board of Surface Mining Appeals 1981) ("the timely filing of

notices of appeals is jurisdictional and cannot be extended or excused . . . .").

Defendant Cupps has not performed any of the abatement measures set out in

the June 12, 2003, Decision of ALJ Lambrecht.   *See* the Sworn Declaration of

Marshall Bussey, ***Exhibit IV***.   In such circumstances, the Secretary is authorized to

> request the Attorney General to institute a civil action for
> relief, ***including a permanent or temporary injunction***,
> restraining order, or any other appropriate order in the
> district court of the United States for the district in which
> the surface coal mining and reclamation operation is
> located or in which the permittee thereof has his principal
> office, whenever such permittee or his agent . . . violates or
> ***fails or refuses to comply with any order or decision***
> ***issued by the Secretary*** under this Act . . . .

30 U.S.C. § 1271(c), emphasis added.   That is precisely the situation here: The

Secretary has issued an order requiring defendant Cupps to take certain steps to

remedy his violations of 30 C.F.R. Part 865, and the defendant has failed or refused

to comply with that order.

---

[16]   Even though Mr. Cupps did not participate in the administrative review process, OSM did not get everything it sought in its enforcement action.   The Administrative Law Judge ruled that OSM failed to prove that Mr. Bussey was entitled to workers compensation and disability benefits.   Decision of ALJ Lambrecht at 6.   Accordingly, the remedy specified by the ALJ for the violation of 30 C.F.R. Part 865 obligates defendant Cupps to pay Mr. Bussey his back wages, but not the disability and workers compensation benefits.

For all of the reasons stated previously, defendant Cupps is effectively barred from re-litigating any of the facts of this violation under the exhaustion doctrine and collateral estoppel. Accordingly, there is no genuine issue as to any material fact and the United States is entitled to a judgment on Count III of the *Complaint* as a matter of law.

## IV.   Conclusion

The doctrine of exhaustion of administrative remedies precludes defendant Cupps from controverting the fact that the subject violations were committed or from contesting the amounts of the civil penalty assessments. The doctrine of collateral estoppel also is applicable, and prevents the defendant from attempting to re-litigate issues that were raised in the related litigation and necessarily decided against him, such as the Secretary's regulatory jurisdiction over his mine sites. The *Preliminary Injunction*, the *Final Judgment* and *Contempt Citation* dated April 18, 2002, clearly demonstrate that defendant's coal removal operations at the 282 Project and the Dad's Hill Project have been adjudicated as "surface coal mining operations" subject to SMCRA. Defendant Cupps therefore owes AML fees on all the coal he produced at those illegal mines, and owes the civil penalties assessed for the citations OSM issued. Additionally, defendant Cupps has not filed an answer or attempted to contest any of the relevant facts in this case. Therefore, there are no genuine issues as to any material facts that remain to be determined. Further, the court determines that the plaintiff is entitled to summary judgment on each of its claims.

A separate order will be entered.

**DONE** and **ORDERED** this the 17th day of April, 2006.

**VIRGINIA EMERSON HOPKINS**
United States District Judge